IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:20-cv-60897

MICHAEL S. DAVIS, individually and on
behalf of others similarly situated,

    Plaintiff,

v.

CBD AMERICAN SHAMAN, LLC,

    Defendant.

## CLASS ACTION COMPLAINT

Plaintiff Michael S. Davis ("Plaintiff") brings this Class Action Complaint on behalf of himself and all others similarly situated against defendant CBD American Shaman, LLC ("Defendant"), and alleges as follows:

## THE PARTIES

1. Plaintiff is an individual who resides in Broward County, Florida. Plaintiff is a citizen of the State of Florida.

2. Defendant is a limited liability company organized and existing under the laws of the State of Missouri. All of Defendant's members are citizens of the State of Missouri.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's claims arising under the Magnuson-Moss Warranty Act pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a). Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because, when aggregated among a proposed nationwide class of more than five thousand, the damages at issue in this lawsuit exceed

the $5,000,000.00 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A).

4. Venue of this action is proper in this district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## BACKGROUND

5. Defendant markets and sells various products derived from a cannabis compound called cannabidiol ("CBD") that is found in all cannabis plants. These products include, but are not limited to, CBD oils, CBD topicals, CBD gummies, CBD capsules pills, CBD edibles, CBD tea, etc.

6. Defendant aggressively markets its products as "all natural" and as having "no heavy metals or insecticides." Indeed, the "About Us" page of Defendant's website (https://cbdamericanshaman.com/about) contains the following statement:

> CBD American Shaman is dedicated to bringing wellness to the world through ultra-concentrated terpene rich CBD oil derived from all natural, high quality industrial hemp. It is legal in all 50 states and is 100% Organic, Gluten Free, Non GMO Hemp and has no heavy metals or insecticides, and is batch tested using Ultra Performance Convergence Chromatography. Please note, our edible items may not be gluten-free, please refer to the detailed descriptions and labels.

7. The bulk of products offered for sale on Defendant's website contain a similar "No Heavy Metals or Insecticides" statement in the product description (on the same page where prospective customers can add such product to their online shopping cart and order it for shipping throughout the United States).

8. The packaging for Defendant's products similarly contains the "No Heavy Metals or Insecticides" statement.

9. Indeed, the "No Heavy Metals or Insecticides" proclamation is so critical to Defendant's advertising strategy that Defendant publishes on its website test results from various reputable laboratories (including ProVerde Laboratories) for its various products (available at https://cbdamericanshaman.com/lab-reports). Prospective customers are linked to these test results prior to their purchase and can view the specific laboratory results with respect to heavy metals, contaminants, pesticides, etc.

10. For example, with respect to one such product ("Water Soluble Full Spectrum Hemp Oil THC Free 300 mg"), Defendant displays on its website the following ProVerde test results with respect to heavy metals and yeast and mold contaminants:

**HM: Heavy Metal Analysis [WI-10-13]**  Analyst: JFD    Test Date: 5/25/2018

This test method was performed in accordance with the requirements of ISO/IEC 17025. These results relate only to the test article listed in this report. Reports may not be reproduced except in their entirety.

30762-HM

| Symbol | Metal | Conc.[1] | Units | MDL | Use Limits[2] All | Ingestion | Units | Status |
|---|---|---|---|---|---|---|---|---|
| As | Arsenic | ND | µg/kg | 4 | 200 | 1500 | µg/kg | PASS |
| Cd | Cadmium | ND | µg/kg | 1 | 200 | 500 | µg/kg | PASS |
| Hg | Mercury | ND | µg/kg | 2 | 100 | 1500 | µg/kg | PASS |
| Pb | Lead | ND | µg/kg | 2 | 500 | 1000 | µg/kg | PASS |

1) ND – None detected to Lowest Limits of Detection (LLD)
2) MA Dept. of Public Health: Protocol for MMJ and MIPS, Exhibit 4(a) for all products.
3) USP exposure limits based on daily oral dosing of 1g of concentrate for a 110 lb person.

**YM: Yeast and Mold Contaminants [WI-10-09]**  Analyst: MS    Test Date: 5/16/2018

This test method was performed in accordance with the requirements of ISO/IEC 17025. These results relate only to the test article listed in this report. Reports may not be reproduced except in their entirety.

30762-YM

| Symbol | Analysis | Results | Units | Limits* | Status |
|---|---|---|---|---|---|
| YM | Total Yeast & Mold | <100 | CFU/g | 1,000 CFU/g | PASS |

11. Relying on the claims made by Defendant's website with respect to "No Heavy Metals or Insecticides," Plaintiff purchased several CBD products directly from Defendant's website between December 5, 2019 and January 14, 2020. Plaintiff would not have purchased these products but for Defendant's advertisement as Plaintiff was looking for products that were

all natural without any potentially harmful chemicals, substances, or elements.

12. Specifically, Plaintiff purchased the following products: (a) December 15, 2019 – 1x Water Soluble, Full Spectrum Hemp Oil (30mL), 1x Water Soluble, Full Spectrum Hemp Oil (30mL), 1x Terpene Rich Hemp Oil Clearomizer THC Free Selected Flavor; (b) January 3, 2020 – 2x Water Soluble, Full Spectrum Hemp Oil (30mL), 2x Water Soluble, Full Spectrum Hemp Oil (30mL), 2x Terpene Rich Hemp Oil Clearomizer THC Free Selected Flavor; (c) January 14, 2020 – 8x Terpene Rich Hemp Oil Clearomizer THC Free Selected Flavor.

13. After using these products for a period of time, Plaintiff became curious about the "No Heavy Metals or Insecticides" claim and decided to send several of the unopened products to the same lab utilized by Defendant – ProVerde Laboratories – for verification of Defendant's claims. Plaintiff did this because he wanted to ensure that the products he purchased met the claims on Defendant's website/on the products themselves.

14. Plaintiff recently received the test results back from ProVerde Laboratories – the same laboratory that Defendant touts on its website as supporting its "No Heavy Metals or Insecticides" claim – and was shocked to learn that Defendant's aforementioned claims are false.

15. For example, the full spectrum hemp oil products submitted by Plaintiff *failed* ProVerde Laboratories' testing for multiple heavy metals, including copper, nickel, and most troubling, lead:



### EA: Elemental Analysis [WI-10-13]

Analyst: CJS      Test Date: 2/25/2020

This test method was performed in accordance with the requirements of ISO/IEC 17025. These results relate only to the test article listed in this report. Reports may not be reproduced except in their entirety.

76830-EA

| Symbol | Metal | Conc.[1] (µg/kg) | RL (µg/kg) | Limits[2] (µg/kg) | Status |
|---|---|---|---|---|---|
| Al | Aluminum | 140 | 50 | - | |
| As | Arsenic | ND | 50 | 200 | PASS |
| Cd | Cadmium | ND | 50 | 200 | PASS |
| Ca | Calcium | ND | 500 | - | |
| Cr | Chromium | 285 | 50 | 300 | PASS |
| Co | Cobalt | ND | 50 | 300 | PASS |
| Cu | Copper | 9,846 | 50 | 3,000 | FAIL |
| Fe | Iron | 1,118 | 50 | - | |
| Pb | Lead | 827 | 50 | 500 | FAIL |
| Mg | Magnesium | 411 | 50 | - | |
| Mn | Manganese | 56 | 50 | - | |
| Hg | Mercury | ND | 50 | 100 | PASS |
| Mo | Molybdenum | ND | 50 | 1,000 | PASS |
| Ni | Nickel | 17,216 | 50 | 500 | FAIL |
| P | Phosphorus | ND | 500 | - | |
| K | Potassium | 3,339 | 500 | - | |
| Se | Selenium | ND | 50 | - | |
| Ag | Silver | ND | 50 | 700 | PASS |
| S | Sulfur | 660 | 500 | - | |
| Sn | Tin | ND | 500 | 6,000 | PASS |
| Zn | Zinc | 10,008 | 50 | - | |

1) ND = None detected to the Method Detection Limit (MDL)
2) USP recommended maximum daily limits for inhalational drug product.

16.     This means that not only does the product contain heavy metals (contrary to Defendant's claims), but also that the presence is of such concentration as to fail laboratory testing.

17.     With respect to the tinctures purchased by Plaintiff, while the test results appear to

show an absence of heavy metals, they are troubling in that they failed the testing for microbiological contaminants – specifically, yeast and mold:

| Symbol | Analysis | Results | Units | Limits* | Status |
|---|---|---|---|---|---|
| AC | Total Aerobic Bacterial Count | <100 | CFU/g | 100,000 CFU/g | PASS |
| CC | Total Coliform Bacterial Count | <100 | CFU/g | 1,000 CFU/g | PASS |
| EB | Total Bile Tolerant Gram Negative Count | <100 | CFU/g | 1,000 CFU/g | PASS |
| YM | Total Yeast & Mold | =31,000 | CFU/g | 10,000 CFU/g | FAIL |

Michael Davis — Certificate ID: 76829 — ural-300 (LOW THC) (Water Soluble - Tinctures)

MB1: Microbiological Contaminants [WI-10-09]    Analyst: AEG    Test Date: 2/10/2020

This test method was performed in accordance with the requirements of ISO/IEC 17025. These results relate only to the test article listed in this report. Reports may not be reproduced except in their entirety.

76829-MB1

Recommended limits established by the American Herbal Pharmacopoeia (AHP) monograph for Cannabis Inflorescence [2013], for consumable botanical products, including processed and unprocessed cannabis materials, and solvent-based extracts. Note: Total Yeast & Mold failed established limits.

18. Not only do the tests reveal the presence of yeast and mold, but the concentration of such is three times the limits referenced within the test data itself.

19. Heavy metals are naturally occurring elements that have a high atomic weight and a density at least 5 times greater than that of water. Their multiple industrial, domestic, agricultural, medical and technological applications have led to their wide distribution in the environment; raising concerns over their potential effects on human health and the environment.

20. Their toxicity depends on several factors including the dose, route of exposure, and chemical species, as well as the age, gender, genetics, and nutritional status of exposed individuals. Because of their high degree of toxicity, arsenic, cadmium, chromium, lead, and mercury rank among the priority metals that are of public health significance.

21. There are many published studies that have documented the adverse effects of lead in children and the adult population. In children, these studies have shown an association between blood level poisoning and diminished intelligence, lower intelligence quotient-IQ, delayed or impaired neurobehavioral development, decreased hearing acuity, speech and language handicaps,

growth retardation, poor attention span, and anti-social and diligent behaviors. In the adult population, reproductive effects, such as decreased sperm count in men and spontaneous abortions in women have been associated with high lead exposure. Acute exposure to lead induces brain damage, kidney damage, and gastrointestinal diseases, while chronic exposure may cause adverse effects on the blood, central nervous system, blood pressure, kidneys, and vitamin D metabolism.

22.     Mold is a type of fungus that grows in multicellular filaments called hyphae. These tubular branches have multiple, genetically identical nuclei, yet form a single organism, known as a colony. In contrast, yeast is a type of fungus that grows as a single cell.

23.     Certain types of mold can be hazardous to human health in large quantities and can cause allergic reactions and respiratory problems. Some molds also produce mycotoxins, which pose a serious risk to humans and animals. Symptoms of mold allergies include watery, itchy eyes, chronic cough, headaches or migraines, difficulty breathing, tiredness, rashes, sinus problems, nasal blockage, and frequent sneezing. Yeasts can cause infection in people with compromised immune systems. They can cause the disease cryptococcossis, which is found in 7-9% of AIDS patients in the US. The yeast candida can also cause candidiasis in humans.

24.     Plaintiff did not open, alter, or modify any of the products he received from Defendant prior to sending such products to ProVerde Laboratories. Plaintiff sent the products to ProVerde Laboratories in their original packaging and paid ProVerde Laboratories' standard fee for performing its lab diagnostics.

25.     Plaintiff has standing to bring these claims because Defendant's conduct resulted in a concrete and particularized injury to him. As stated above, Plaintiff relied on Defendant's advertising of "No Heavy Metals or Insecticides" and that its products are "all natural" and do not contain contaminants. Plaintiff would not have bought Defendant's products had Plaintiff known

in advance that they contained potentially dangerous heavy metals and other contaminants, contrary to the test results published by Defendant on its own website and the various claims it makes on the website and the products themselves.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated (the "Class").

27.     Plaintiff represents, and is a member of the following class:

> All persons within the United States who, within the four years prior to the filing of this Complaint, purchased any product sold by Plaintiff based in part on Plaintiff's advertisement that such products contained no heavy metals, no insecticides, and/or no contaminants.

28.     **Numerosity**.  Upon information and belief, Defendant has sold products containing heavy metals, insecticides, and/or other contaminants to thousands of consumers throughout the United States.  Therefore, the members of the Class are believed to be so numerous that joinder of all members is impracticable.  The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  The Class is also objectively defined and presently ascertainable by reference to records in the possession of Defendant or third parties, and their identification is a matter of ministerial determination from, *inter alia*, Defendant's receipts and/or sales logs.

29.     **Common Questions of Law and Fact**.  There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether any of Defendant's products contain any amount of heavy metals;

(b)     Whether any of Defendant's products contain any amount of insecticides;

(c)     Whether any of Defendant's products contain any amount of contaminants;

(d) Whether Defendant advertised any product containing heavy metals, insecticides, or contaminants as being free from any such substance;

(e) Whether and to what extent consumers purchased products from Defendant that contain heavy metals, insecticides, and/or contaminants;

(f) Whether Defendant's conduct was knowing and willful; and

(g) Whether Defendant is liable for damages and the amount of such damages.

30. **Typicality**.  Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

31. **Protecting the Interests of Class Members**.  Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

32. **A Class Action is Superior**.  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are believed to be in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits.  The likelihood of individual Class Members prosecuting their own separate claims is remote and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by the individual litigation of such cases.  Further, the prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

33. All conditions precedent to the filing of this action have been performed, occurred, or been waived.

## COUNT ONE: VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
**(15 U.S.C. § 2301, *et seq*.)**

34. Plaintiff re-alleges and incorporates paragraphs 1 through 33 as set forth above.

35. Plaintiff brings this claim individually and on behalf of the members of the Class.

36. Defendant's CBD products are consumer products as defined in 15 U.S.C. § 2301.

37. Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301.

38. Plaintiff purchased Defendant's products costing more than $5.00 and their individual claims are greater than $25.00 as required by 15 U.S.C. § 2302(e) and 15 U.S.C. § 2310(d)(3)(A).

39. Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5)

40. In connection with the sale of its CBD products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6) which warranted that the products conformed to Defendant's promise of no heavy metals, insecticides, and/or other contaminants.

41. Defendant breached these written warranties because its CBD products did in fact contain heavy metals, insecticides, and/or other contaminants.

42. By reason of Defendant's breach of the written warranties, Defendant violated the statutory rights due Plaintiff and the Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and the Class members.

Within a reasonable time after Plaintiff knew or should have known of such failure to conform, Plaintiff gave Defendant notice thereof.

## COUNT TWO: VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

43. Plaintiff re-alleges and incorporates paragraphs 1 through 33 as set forth above.

44. Plaintiff brings this claim individually and on behalf of the members of the Class.

45. Defendant's conduct in falsely advertising its CBD products as being free of heavy metals, insecticides, and other contaminants constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Florida Statutes, § 501.201 et seq.

46. Defendant's masking of the fact that its CBD products contain potentially harmful levels of lead, copper, nickel, mold, and yeast constitutes a "deceptive act or practice" in the conduct of trade/commerce (specifically the sale of CBD products).

47. As a direct and proximate result of Defendant's deceptive act or practice, Plaintiff and the other Class members suffered substantial damages as no members of the Class would have purchased Defendant's products had they known the truth of their contents.

48. Upon information and belief, Defendant's conduct is willful as Defendant knows/understands that its products are not free of heavy metals, insecticides, or other contaminants.

## COUNT THREE – BREACH OF EXPRESS WARRANTY

49. Plaintiff re-alleges and incorporates paragraphs 1 through 33 as set forth above.

50. Plaintiff brings this claim individually and on behalf of the members of the Class.

51. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of CBD products expressly warranted that such products were fit for their intended purpose by representing them to be free of heavy metals, insecticides, and other contaminants.

52. In fact, Defendant's products are not fit for such purposes because Defendant's express warranty is false. Defendant's products are not free of heavy metals, insecticides, and/or other contaminants.

53. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased Defendant's products on the same terms if the true facts were known concerning their ingredients/chemical composition; (b) they paid a price premium for Defendant's products due to Defendant's claims; and (c) Defendant's products did not have the quality, functionality, or value as promised.

## COUNT FOUR: VIOLATION OF FLA. STAT. § 817.41

54. Plaintiff re-alleges and incorporates paragraphs 1 through 33 as set forth above.

55. Plaintiff brings this claim individually and on behalf of the members of the Class.

56. Fla. Stat. § 817.41(1) states, in pertinent part, that "[i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement."

57. Fla. Stat. § 817.40(5) states: "The phrase 'misleading advertising' includes any statements made, or disseminated, in oral, written, electronic, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

58. Fla. Stat § 817.41(6) provides for a private cause of action for any person damaged as a result of misleading advertising.

59. Defendant's conduct of representing its CBD products as containing no heavy metals, insecticides, or other contaminants constitutes a violation of Fla. Stat. § 817.41 for which

Plaintiff and the Class members suffered substantial damages.

## COUNT FIVE: VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
**(MO. Rev. Stat. §§ 407.020 *et seq*.)**

60. Plaintiff re-alleges and incorporates paragraphs 1 through 33 as set forth above.

61. Plaintiff brings this claim individually and on behalf of the members of the Class.

62. The Missouri Merchandising Practices Act, MO. Rev. Stat. § 407.020 provides, in part, as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce … in or from the state of Missouri, is declared to be an unlawful practice … Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

63. The Missouri Merchandising Practices Act further provides for a civil action to recover damages in Mo. Rev. Stat. § 407.025.1, as follows:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

64. Defendant's conduct in falsely advertising its CBD products as being free of heavy metals, insecticides, and other contaminants constitutes a violation of the Missouri Merchandising Practices Act.

65. As a direct and proximate result of Defendant's false advertising of its CBD products, Plaintiff and the other Class members suffered substantial damages as no members of the Class would have purchased Defendant's products had they known the truth of their contents.

66. Upon information and belief, Defendant's conduct is willful as Defendant knows/understands that its products are not free of heavy metals, insecticides, or other contaminants.

## Demand For Jury Trial

Plaintiff demands a trial by jury on all issued so triable.

Dated: May 4, 2020.

DESOUZA LAW, P.A.
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (954) 603-1340
DDesouza@desouzalaw.com

By: /s/ Daniel DeSouza, Esq.
    Daniel DeSouza, Esq.
    Florida Bar No.: 19291